HECTOR ROSADO, Plaintiff, v PROCTOR & SCHWARTZ, INC., Defendant and Third-Party Plaintiff-Appellant. COMET FIBERS, INC., Third-Party Defendant-Respondent.

First Department, December 27, 1984

### APPEARANCES OF COUNSEL

*Irwin H. Haut* of counsel (*Morris, Duffy, Ivone & Jensen,* attorneys), for defendant and third-party plaintiff-appellant.

*Anne Flanagan* of counsel (*Eileen Eglin* and *Michael N. Stevens* with her on the brief; *Wilson, Elser, Edelman & Dicker,* attorneys), for third-party defendant-respondent.

### OPINION OF THE COURT

FEIN, J.

The facts are fairly stated in the dissent.

It is conceded that no claim for contribution is now available. Any such claim, founded upon negligence, has been extinguished by reason of the settlement of plaintiff's claims against the third-party defendant (Comet) and the third-party plaintiff (Proctor) (General Obligations Law, § 15-108, subds [b], [c]; *McDermott v City of New York*, 50 NY2d 211, 220). The only issue is whether Comet can be held liable to indemnify Proctor, either (1) under the terms of the contract between them, which it is conceded contains no provision for indemnification, or (2) upon the basis of implied indemnity.

One of the causes of action pleaded by plaintiff against Proctor, the manufacturer of the equipment, was premised on the theory of strict liability. Proctor now asserts that had the jury

rendered a verdict for the plaintiff against Proctor on strict liability, Proctor would have been entitled to indemnification from Comet, plaintiff's employer who purchased the equipment from Proctor.

As the dissent concedes, no basis for contractual indemnification can be found, since there is no explicit agreement by Comet (the purchaser and plaintiff's employer) to indemnify or hold the manufacturer harmless (*Levine v Shell Oil Co.,* 28 NY2d 205; *Pahlavi Foundation v Metropolitan Life Ins. Co.,* 90 AD2d 730; *Margolin v New York Life Ins. Co.,* 32 NY2d 149; *Vey v Port Auth.,* 54 NY2d 221).

The manufacturer contends that strict products liability is a species of absolute liability without fault so that if it were to be held liable to plaintiff under strict liability, it would be entitled to recover on the basis of implied indemnity from Comet, which undertook to install the safety guards and is alleged to have been primarily responsible for any improper installation.

It cannot be concluded that strict tort liability imposes liability without fault, albeit a plaintiff in such a case need not prove negligence (*Cover v Cohen,* 61 NY2d 261, 270). It is plain that strict liability requires proof that the product was defective when it left the hands of the manufacturer, whether the defect consisted of a mistake in manufacture, a design defect, or the absence or inadequacy of warnings as to the use of the product.

As stated in *Codling v Paglia* (32 NY2d 330, 342): "We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages". The rationale for such doctrine is stated in that case (at pp 340-341): "In today's world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. * * * We are accordingly persuaded that from the standpoint of justice as regards the operating aspect of today's products, responsibilities should be laid on the manufacturer, subject to the limitations we set forth." Although strict liability may not require proof of fault in the negligence sense, it is nonetheless founded upon a species of fault. A manufacturer who launches or places a defective product on the market is liable because he has breached a duty to those who use the product and who are injured by reason of the defect (*Micallef v Miehle Co.,* 39 NY2d 376; *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 107). It is not a species of liability without fault. Nor is it a form of vicarious liability for the

wrongdoing of another, imposed as a matter of social policy, such as the liability of an employer for the acts of an employee, or of an owner of a vehicle for the acts of the driver, or of an owner for the acts of a contractor.

This has nothing to do with the liability of Proctor, the manufacturer here. Its liability is founded upon its breach of duty to the plaintiff, imposed by the doctrine of strict liability. Proctor is here seeking to shift its liability to Comet because of their contract. Thus, the dissent's reliance upon *Garrett v Holiday Inns* (86 AD2d 469) is misplaced. There it was alleged that the municipal authorities were negligent in issuing a certificate of occupancy to prior owners falsely certifying that the building complied with fire laws. It was held that lessees and new owners of the premises were not entitled to indemnification from the city for the amounts paid by them to plaintiffs injured on the premises in a fire which occurred by reason of the defective condition. The municipal authorities owed no duty to the plaintiff, nor did they owe a duty to the owner of the premises. Here, both Comet, the purchaser, and Proctor, the manufacturer and seller, owed a duty to plaintiff, Comet's employee. Each breached its duty. What is really being sought is contribution, not indemnity. As *Garrett* (*supra*) holds, implied indemnity, relied on here, is a restitution concept which permits shifting the costs, because to fail to do so would result in the unjust enrichment of one party at the expense of the other. Indemnity can be sustained only if the third-party plaintiff and the third-party defendant have breached a duty to plaintiff and some duty to indemnify exists between them (*Garrett v Holiday Inns,* 86 AD2d, at p 471). In *Garrett* there was no unjust enrichment of the municipal authorities by denying indemnity to the owner of the premises. No duty to indemnify is shown here.

Nor is *McDermott v City of New York* (*supra*), relied upon in the dissenting and concurring opinions, to the contrary. In that case the sanitation worker was injured while using equipment sold by the manufacturer to the City of New York with a latent defect. The worker was injured 19 days after delivery of the equipment to the city. The city was found entitled to indemnification because the manufacturer had breached a duty to the injured sanitation worker and was therefore responsible for the damages the city had to pay on account of that breach of duty. The obligation of the manufacturer to the employee was the foundation of its liability for indemnification (*McDermott v City of New York,* 50 NY2d 211, 218, 219, nn 4, 5, *supra*).

Here, the breach of duty to the employee was that of the manufacturer who now seeks to recover from its purchaser,

plaintiff's employer, based upon the contract between them. At best for the manufacturer, the alleged failure of the purchaser to perform the duty which strict liability imposed upon the manufacturer amounted to a breach of their contract. But since the law is clear that in New York there is no liability to indemnify unless it is plainly spelled out in the contract (*Levine v Shell Oil Co., supra; Margolin v New York Life Ins. Co., supra*), no basis exists for finding implied indemnity. Moreover, both the manufacturer and the purchaser were at fault, and thus, the claim is for contribution and not indemnity, albeit Proctor asserts its claim is for indemnity (*Garrett v Holiday Inns,* 86 AD2d 469, 471, *supra; McDermott v City of New York, supra; County of Westchester v Becket Assoc.,* 102 AD2d 34, 45-47).

Moreover, there is no triable issue as to whether the case is one for products liability. In *McDermott (supra)*, the product malfunctioned due to a latent defect. Whatever the liability of the city, it was not premised upon its failure properly to design the equipment. The duty breached, upon which indemnification was based, was the duty of the manufacturer not to place on the market a piece of equipment which was defective in design, albeit the defect was latent. No reason exists why Proctor, the manufacturer here, should be permitted to shift liability to Comet, the purchaser, where the agreement between them imposed no duty of indemnification. Each breached a different duty. Had the parties intended indemnification, their contract could have clearly so provided. No theory of implied indemnity should be invoked to add a provision to a contract which fails to provide indemnity. There is no unjust enrichment in denying indemnity.

*Proctor & Schwartz v United States Equip. Co.* (624 F2d 771), relied upon in the dissent, was decided under Michigan law. There is no authority to the same effect in New York. In that case, the same manufacturer, relying upon the same contract as that involved here, was found entitled to indemnity from an employer who purchased the machine. However, the Sixth Circuit held that a manufacturer's duty to the consumer may be delegated to the consumer because he is in the best position to install the necessary safety devices. This is contrary to the New York products liability cases holding that the duty rests upon the manufacturer because of his superior knowledge and ability to design and install adequate safety devices (*Codling v Paglia, supra*).

*Robinson v Reed-Prentice Div.* (49 NY2d 471) makes this clear in another context (at p 480): "[T]he manufacturer is in a

superior position to anticipate the reasonable use to which his product may be put and is obliged to assure that no harm will befall those who use the product in such a manner. It is the manufacturer who must bear the responsibility if its purposeful design choice presents an unreasonable danger to users." In that case, the manufacturer escaped liability solely because the owner-purchaser of the equipment had so modified it as to defeat the safety devices.

*Cox v Cordice* (90 AD2d 297), also relied upon by the dissent, is not to the contrary. A hospital was held liable for negligent diagnosis by a pathologist under contract to the hospital. Obviously, the liability of the hospital was dependent upon the acts of its employees or contractors, since it could only act through such persons. The hospital's liability flowed from those persons' breach of duty, and hence, the duty imposed upon the hospital to respond in damages for their malpractice entitled the hospital to indemnity even in the absence of an express contract to that effect.

The effect of the dissent's proposed reinstatement of the cause of action for indemnity in the amended third-party complaint could only result in a mock trial. The plaintiff has settled out of the case as against the third-party plaintiff and the third-party defendant, and obviously has no further interest in litigating the claim. In effect, the trial would consist of an effort by the third-party plaintiff to establish either that there was no defect in the equipment that it manufactured and sold, or that if there was such a defect it was the duty of its purchaser to correct the defect. Obviously, this is an attempt to shift a duty imposed by law, not on the basis of vicarious liability but on the basis of a contract lacking any provision for indemnity.

A boiler plate provision in a contract requiring the purchaser to install safety devices should not give rise to a claim for indemnity. Nor is there any basis for finding implied indemnity under the circumstances. To hold otherwise would defeat the salutory purposes of the doctrine of strict products liability.

Order of Supreme Court, New York County (Orest V. Maresca, J.), entered July 27, 1983, granting third-party defendant's motion to dismiss the second cause of action asserted in the amended third-party complaint, should be affirmed, with costs.

SILVERMAN, J. (concurring). This is an action for personal injuries against defendant third-party plaintiff Proctor & Schwartz, Inc., the manufacturer of an allegedly defective machine; defendant third-party plaintiff interposed a third-party

complaint against third-party defendant defendant Comet Fibers, Inc., plaintiff's employer, for contribution and for indemnification.

Trial Term granted third-party defendant's motion to dismiss the cause of action for indemnification; it did so on the pleadings before trial, and third-party plaintiff appeals from that determination.

I have some question as to whether it was not premature for Trial Term to dismiss the indemnification claim on the pleadings at that stage. I suppose there was a possibility that the ultimate jury verdict would be on a ground which would entitle defendant to indemnification, as distinct from contribution. A claim for indemnification, unlike one for contribution, is not extinguished by settlement with one of several tort-feasors. (General Obligations Law, § 15-108, subds [b], [c]; *McDermott v City of New York,* 50 NY2d 211, 220.) I am assuming, for this purpose, that if a verdict had been rendered on a strict products liability ground, that would be a basis for indemnification which would not be barred by plaintiff's settlement with the employer under subdivision (c) of section 15-108 of the General Obligations Law. (Cf. *McDermott v City of New York, supra,* pp 218-219.)

However, we now know without dispute of some events which had not yet occurred at the time Trial Term granted the motion: Immediately after the motion was granted, third-party defendant, the employer, settled with the plaintiff (who was not making any direct claim against third-party defendant) for $300,000. Under section 15-108 of the General Obligations Law, that settlement barred any claim for *contribution* by or against third-party defendant vis-à-vis any other tort-feasor including third-party plaintiff. The trial began and after a few days defendant third-party plaintiff settled with the injured plaintiff for $200,000, and it is for this payment that third-party plaintiff presumably seeks *indemnification*. It is the position of third-party plaintiff that its liability, if any, was a strict products liability not based on fault, and that, therefore, its claim against the employer (who is alleged to have failed in its contractual obligation to furnish and attach certain guards on the machine) is not for contribution but for indemnification. (Cf. *McDermott v City of New York, supra.*)

However, we have the complaint of the injured plaintiff before us and it clearly contains in its first cause of action a claim for negligence by defendant. The second and third causes of action were entitled "breach of warranty" and "strict tort liability" — but each of those causes of action repeats and realleges the

paragraphs of the complaint alleging negligence by defendant. No jury or court has determined that defendant was liable to the injured plaintiff on either theory, nor was the issue fully explored on trial. The case was settled before there was such a determination or even full presentation of evidence. Nor has there been any determination on which theory the case was settled. We do not know how large plaintiff's negligence claim against defendant loomed in that settlement. In any event, that would be a wholly subjective matter; defendant's attorneys may not have thought much of it and plaintiff's attorneys may have taken a different view. I do not think the right of indemnification should turn on our appraisal of the subjective attitude of the attorneys.

What is clear is that the settlement released all claims, obviously including the negligence claim against defendant.

The obvious policy of section 15-108 of the General Obligations Law is to enable the parties to settle and get out of the action without starting up an endless chain of claims over (usually between insurance companies, each of which has been paid a premium for assuming the underlying risk) — a policy of repose. Thus, when one of two tort-feasors settles, he is relieved from liability to any other person for contribution (General Obligations Law, § 15-108, subd [b]) and he waives his right to contribution from any other tort-feasor (General Obligations Law, § 15-108, subd [c]). True, the statute is limited to contribution and not to indemnity, i.e., to situations "where the tort-feasors share, in some degree, responsibility for the wrong." (*McDermott v City of New York*, 50 NY2d, at p 220.) But I would apply that policy of the statute broadly. Given a case such as this where the action that is settled clearly includes a cause of action which could give rise to a claim for contribution as distinct from indemnity, and the settlement of the action includes a settlement of that cause of action, and the plaintiff's original cause of action has never gone to judgment or been fully litigated, I would apply the policy of repose of section 15-108 of the General Obligations Law to bar all claims over by or against a party who has thus settled even if it is contended that some of the causes of actions settled could have given rise to a claim for indemnification.

This consideration is strengthened — perhaps even rendered superfluous — by the fact that here each cause of action in the complaint which was settled and released alleges or realleges negligence on the part of the defendant. That was true when the employer settled with plaintiff, thus relieving defendant of any

(theoretical) liability to the employer; and when defendant settled, thus waiving its claim to contribution.

KASSAL, J. (dissenting). I disagree with the majority and would modify to deny the motion to dismiss the second cause of action in the third-party complaint for indemnity and remand the third-party action for trial on that cause. In my view, principles of equity and fairness warrant upholding a claim for indemnity under the facts of this case.

The issue is whether a manufacturer may obtain indemnification from the purchaser where, as here, the purchaser had agreed to be responsible for complying with local laws, did assemble and complete the product and, allegedly, the manner by which the completion was performed is said to be the proximate cause of the resulting injuries.

On December 3, 1970, in Pennsylvania, defendant third-party plaintiff entered into a written contract to manufacture certain machinery for use by the third-party defendant purchaser at its factory in Brooklyn, New York. The agreement described the equipment, a garnett, provided for its delivery in an unfinished state and set forth the several responsibilities assumed by the purchaser. Among those listed under the category "WORK AND MATERIAL TO BE FURNISHED BY THE PURCHASER", were:

"4. All electrical wiring * * * plus disconnect switches as required * * *

"6. The necessary guards for the exposed moving parts of the machine in accordance with the laws of the district in which the machine is to be located."

As a result, it was agreed that the required safety guards and disconnect switches were to be installed by the purchaser, not by the manufacturer. The machine was assembled and installed by the purchaser's personnel, who also placed a mesh fence around the gear and pulley area. The fence contained a gate, consisting of several broad doors which, when opened, exposed the pulleys, chains and gears. It had a simple latch with no interlock on the gate and there was no machine cutoff. While it appears that the manufacturer had safety doors available and expert engineering services to install the guards, the purchaser did not avail itself of such opportunity. Although the record does not clearly reflect the extent of the discussions and negotiations between the parties respecting their relative responsibilities at the time the machine was purchased, it clearly appears that the purchaser did agree to complete the job and, expressly obligated itself to comply with all pertinent laws and regulations of this State.

More than 5½ years after the purchase, on September 9, 1976, plaintiff, an employee of the purchaser who was hired to cleanup and assist with the machine, was severely injured when his right hand was caught in the exposed power chain. It is also alleged that, at the time of the accident, there was no warning posted on the fence. As far as appears, any instructions to plaintiff in connection with the operation of the machine were furnished by the employer.

Plaintiff's action against the manufacturer was predicated upon claims of negligence and strict products liability based upon design defect, the manufacturer, in turn, impleading the purchaser to recover over for contribution and indemnity. When the case came on for trial, the court granted the third-party defendant's oral application to dismiss the second cause of action in the third-party complaint for indemnity, whereupon the employer (third-party defendant) entered into a settlement with the injured employee. The employee's case against the manufacturer proceeded and was settled during trial. This appeal is by the manufacturer from the dismissal of its second cause of action in the third-party complaint to obtain indemnification from the purchaser.

I agree that, under the circumstances, there is no claim for contribution which may be raised at this time, any such claim having been extinguished by the settlement (General Obligations Law, § 15-108, subds [b], [c]; *McDermott v City of New York,* 15 NY2d 211, 220). I also agree that, under the facts of this case, no claim for contractual indemnification exists since the contract does not contain an explicit agreement by which the purchaser agreed to indemnify or hold the manufacturer harmless (see *Levine v Shell Oil Co.,* 28 NY2d 205; *Margolin v New York Life Ins. Co.,* 32 NY2d 149; *Vey v Port Auth.,* 54 NY2d 221).

However, in my view, the record is sufficient to raise in issue a claim for common-law indemnity by the manufacturer against the purchaser. The manufacturer concedes that, had it been held liable to the injured employee in negligence, no indemnity claim could be asserted since, in such case, a verdict on the negligence cause would amount to a finding of "fault" and, under the law of this State, indemnity may not be had by a primary or actual wrongdoer against another primary or actual wrongdoer. The remedy applies to permit a party secondarily responsible to proceed against the primary or actual tort-feasor (*McDermott v City of New York, supra; Mauro v McCrindle,* 70 AD2d 77, affd 52 NY2d 719; *Smith v Hooker Chem. & Plastics Corp.,* 83 AD2d 199; *Garrett v Holiday Inns,* 86 AD2d 469; *County of Westchester v Becket Assoc.,* 102 AD2d 34).

The manufacturer does contend, however, that to the extent it would have been held responsible to the plaintiff under strict products liability, which, according to appellant, is equivalent to absolute liability without fault, it may obtain indemnity against the purchaser, which installed the safety guards and is alleged to be primarily responsible for any improper installation. This argument is premised upon the assumption that strict tort liability results in the imposition of liability without "fault", which may not be the case (see *Cover v Cohen,* 61 NY2d 261, 270). A manufacturer, held under strict tort liability, is held accountable as a wrongdoer. While the proof with respect to a claim for strict liability is less exacting than that in negligence, nevertheless, it must be established that there was a defect in the product when it left the hands of the manufacturer, whether the defect consisted of a mistake in manufacturing, a design defect or the absence or inadequacy of warnings with respect to the use of the product (*Robinson v Reed-Prentice Div.,* 49 NY2d 471, 478-479; *Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 107; *Codling v Paglia,* 32 NY2d 330; 1 American Law of Products Liability, §§ 4.7, 4.10 *et seq.,* 4.32). Although plaintiff's prima facie case does not require proof that the manufacturer acted unreasonably in the design or manufacture of the product, in any event, there must be proof that there was a defect at the time the product entered the stream of commerce and, to the extent such proof exists, the liability of the manufacturer, whether for a design or manufacturing defect, does impose liability for fault in a general sense. The situation with respect to the manufacturer in terms of strict liability is not analogous to that involving absolute liability without fault, as under the Labor Law, or the vicarious liability imposed upon an employer under the doctrine of *respondeat superior,* or that imposed by statute upon the owner of a vehicle for the actions of the operator, using the vehicle with the permission and consent of the owner.

However, the conclusion that strict tort liability is a "fault" concept is not dispositive here. The existence of a right to indemnity is generally based upon equitable considerations, to prevent unfairness or unjust enrichment. As was succinctly observed by Justice Simons in *Garrett v Holiday Inns* (86 AD2d, at p 470): "In indemnity, a party held legally liable to plaintiff shifts the entire loss to another. His right to do so may be based upon an express contract * * * but more commonly the indemnity obligation is implied, based upon the laws' notion of what is fair and proper as between the parties legally liable. Implied

indemnity, which we are considering here, is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party (the indemnitor) at the expense of the other (the indemnitee)".

Applying this standard, the Court of Appeals in *McDermott v City of New York* (*supra*) permitted the city to assert an indemnity claim against the third-party defendant manufacturer, in an action brought by an employee to recover for the loss of an arm sustained in the operation of a hopper mechanism of a sanitation truck. The court reinstated the third-party claim for indemnity, Chief Judge Cooke observing (50 NY2d, at pp 216-217, 220):

"Conceptually, implied indemnification finds its roots in the principles of equity. It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' (Restatement, Restitution, § 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs * * *

"where indemnity is at issue, one party is alleging that the other party should bear complete responsibility for the tort. Should the party seeking indemnity negotiate a settlement, this in itself would have no consequences upon the indemnity claim. Irrespective of the amount of the settlement, the indemnitor is either totally responsible or not."

Applying the foregoing here, the manufacturer claims a failure on the part of the purchaser to discharge the duty it assumed to properly install the safety guards, an obligation under the express terms of the agreement. On that basis, it is claimed that, as between these parties, it is the purchaser who was primarily responsible for the installation of the guards and the disconnect switches and the failure to perform, under equitable principles, should impose complete responsibility upon the third-party defendant.

In *Proctor & Schwartz v United States Equip. Co.* (624 F2d 771), the United States Court of Appeals for the Sixth Circuit was confronted with the identical issue as that posed here. In that case, Proctor had manufactured machinery under an agreement which similarly provided that the necessary guards for the exposed moving parts were to be provided by United States Equipment Co., the employer of the injured plaintiff. As in our case, plaintiff's action against Proctor had been settled and an action was thereafter brought by Proctor against the purchaser

to recover on a theory of implied indemnity. The court upheld the indemnity claim as legally sufficient, finding that plaintiff's pleadings raised factual issues as to the existence of an implied indemnity obligation. In denying summary judgment, the court there observed that the contract placed the burden of compliance with local law upon the purchaser, stating: "The logic of such a provision is apparent. Because the purchaser of the machinery would be in a better position to know local law and exactly how the machinery was to be used, the parties agreed that the purchaser should install the necessary safety devices." (624 F2d, at p 775.) While the court in *Proctor* recognized that traditional common-law principles of indemnity required that a party seeking indemnification be free from personal fault, i.e., that he be passively and not actively responsible, it did recognize that, under Michigan law, a claim for indemnity could be based upon implied contract, under which liability might be imposed upon an undertaking, either oral or in writing, by the party from whom indemnity was sought "to perform a certain service or furnish a product to the other party" (*Dale v Whiteman,* 388 Mich 698, 705).

While no New York authority has been cited as upholding the sufficiency of an indemnity claim on law similar to that in Michigan, in my view, the same equitable principles do apply. Under the facts here and "based upon the laws' notion of what is fair and proper as between the parties" (*Garrett v Holiday Inns,* 86 AD2d, at p 470), the sufficiency of the indemnity claim in the third-party pleading should be sustained. Arguably, there is a factual issue whether the third-party defendant discharged its duty owed to the manufacturer. If established, to avoid unjust enrichment, the court may act to place the obligation "where in equity it belongs". (*McDermott v City of New York,* 50 NY2d, at p 217.)

There is an additional factual issue here as to whether there was a defect, either in the design or in the manufacture, by reason of the sale and delivery of a product in an unfinished state. It is for the jury to determine whether the manufacturer reasonably relied upon another to complete the product. In part, determination of this issue will be dependent upon the jury's assessment of the relative obligations of the parties, bearing in mind that the absence of adequate safety guards is alleged to have caused the accident and, under the circumstances, could be found to have rendered the product inherently dangerous.

The holding in *Robinson v Reed-Prentice Div.* (49 NY2d 471) is instructive, albeit the factual situation there is distinguishable. In *Robinson,* plaintiff, a machine operator, employed by

the third-party defendant, brought suit against the manufacturer to recover for serious injuries sustained approximately 6½ years after the plastic molding machine had been manufactured. It was established that the accident occurred when the employer modified the safety gate of the machine to accommodate its own needs and, as a result, nullified the safety features inherent in the manufacturer's design. The Court of Appeals dismissed the complaint, finding no liability as against the manufacturer, either in negligence or in strict products liability, since the product had been substantially altered after it left the possession and control of the manufacturer. The court observed (49 NY2d, at pp 480-481):

"the manufacturer is in a superior position to anticipate the reasonable use to which his product may be put and is obliged to assure that no harm will befall those who use the product in such a manner. It is the manufacturer who must bear the responsibility if its purposeful design choice presents an unreasonable danger to users * * *

"The manufacturer's duty, however, does not extend to designing a product that is impossible to abuse or one whose safety features may not be circumvented. A manufacturer need not incorporate safety features into its product so as to guarantee that no harm will come to every user no matter how careless or even reckless".

Here, however, the responsibility for the installation of the safety devices by express agreement was delegated by the parties to the purchaser, to be accomplished pursuant to applicable local law. Whether the delegation of duty here was proper and whether the manufacturer could reasonably rely upon another to complete this product in terms of safety is not now before us. At this juncture, it is sufficient to find that, as between these parties, it may be established that the primary and ultimate responsibility was upon the purchaser, not the manufacturer.

In *Cox v Cordice* (90 AD2d 297), we reinstated a third-party claim for indemnity by a hospital against its staff pathologist and his professional corporation, where the hospital had been held liable for the negligent diagnosis by a pathologist who had acted as a substitute for the third-party defendant, based upon an agreement by which the staff pathologist assumed responsibility for substitute professional pathologists while he was absent from duty and guaranteed "the full and complete performance of the obligations hereunder by the Corporation" (*supra,* p 299). The observation by Presiding Justice Murphy in that case is equally applicable here (90 AD2d, at p 299): "This

contract between the parties did not contain any express covenant of indemnity. Nonetheless, even in the absence of an express covenant of indemnity, a primary or principal wrongdoer is responsible for his negligent act not only to the person injured, but to one indirectly harmed by being cast in damages by operation of law for the wrongful act * * * Thus, one party to a contract may be held as the indemnitor of the other if that other party is cast in damages as a result of the first party's dereliction of duty. (*Witz v Cadillac Hotel*, 26 AD2d 763, affd 19 NY2d 824.)"

Accordingly, the order, Supreme Court, New York County (Orest V. Maresca, J.), entered July 27, 1983, granting the motion to dismiss the second cause of action for indemnity in the amended third-party complaint, should be reversed, on the law, the motion denied, the second cause of action of the amended third-party complaint reinstated and the matter remanded for further proceedings.

SANDLER, J. P., concurs with FEIN, J.; SILVERMAN, J., concurs in an opinion; KASSAL, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on July 27, 1983, affirmed. Respondent shall recover of appellant $75 costs and disbursements of this appeal.