■ New York Telephone Company, Appellant, v Gulf Oil Corporation et al., Respondents. [609 NYS2d 244] —Order of the Supreme Court, New York County (Carol H. Arber, J.), entered April 28, 1992, which denied plaintiff's motion for summary judgment pursuant to CPLR 3212, is unanimously reversed, on the law, and plaintiff's motion for summary judgment is granted as to liability, with costs and disbursements payable to plaintiff.

The plaintiff entered into a contract with defendant Gulf Oil Corporation by which Gulf (described as "seller" in the contract) was to provide gasoline to plaintiff (described as "customer") at various locations in the metropolitan area. With respect to indemnity and seller's obligation to provide insurance coverage, the contract provides, *inter alia:*

"indemnity

"(1) seller assumes full and complete liability for all injuries, or death of any persons, for damage to property, including the property of customer and for all claims, losses or expense resulting directly or indirectly from the performance of the service under this agreement whether caused by the negligence of seller or anyone acting on behalf of seller.

"(2) SELLER shall indemnify and save harmless CUSTOMER its officers and employees from and against losses, claims, demands, payments, suits, actions, recoveries and judgments of every nature and description, out of or in any manner caused by the performance of any services or the providing of any materials under this agreement by SELLER of SELLER's employees, agents or subcontractors.

"INSURANCE REQUIREMENTS

"SELLER shall obtain and maintain during the period that this Agreement is in effect General Comprehensive Public Liability Insurance in the minimum amount of One Million Dollars ($1,000,000.00) CSL to protect itself and CUSTOMER against any claims, demands, personal injuries (including death) or property damage arising out of the performance by SELLER under this Agreement".

On December 5, 1986, an employee of Janus Petroleum, defendants' agent for the purpose of delivering the fuel, made a delivery of 1000 gallons of gasoline to plaintiff's garage in accord with the contract. It is not disputed that defendants' agent pumped the gasoline into the incorrect receptacle in the sidewalk. There was an expert opinion submitted that the gasoline overflowed from the heating oil tank, spilled into the basement of the premises and ignited when the fumes came into contact with the heating equipment, causing extensive property damage.

The IAS Court held that the contract was ambiguous as to whether it was intended that the plaintiff be indemnified against its own negligence, and denied summary judgment.

It is now settled that a party may be indemnified against its own active negligence by contract provided that the "intention to indemnify can be clearly implied from the language and purposes of the entire agreement, and the surrounding facts and circumstances" (*Margolin v New York Life Ins. Co.*, 32 NY2d 149, 153; *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774).

A contract of indemnity need not explicitly state an intent that the undertaking extend to the indemnitee's own negligent acts. Thus, in *Levine v Shell Oil Co.* (28 NY2d 205, 210), the Court of Appeals held that a contract whereby the third-party defendant agreed to indemnify the defendant oil company against " 'any and all claims, suits, loss, cost and liability on account of injury or death of persons * * * caused by or happening in connection with the premises,' " evinced an unmistakable intent that the indemnitee be indemnified

against its own active negligence. The Court held that specific reference to the active negligence of the indemnitee was unnecessary *(supra,* at 211), as were talismanic phrases such as " 'of whatsoever kind or nature' " and " 'or otherwise' " *(supra,* at 212).

Here, the language employed could not be more expansive. The defendants "assume[d] *full and complete* liability for * * * *all* claims, losses or expense resulting *directly or indirectly* from the performance of the service under this agreement *whether caused by the negligence of SELLER or anyone acting on behalf of SELLER."* (Emphasis added.) We interpret the latter phrase as meaning that seller agrees to be liable *whether or not* it or its agents are negligent.

Even assuming, *arguendo,* that it means the seller is liable for losses resulting from its work under the contract where the seller or its agents are negligent, it does not manifest an intent that liability be limited to occurrences where the event is caused by seller's *sole* negligence. In other words, the negligence of the seller will render it liable, even if the negligence of others contributed to the occurrence.

Finally, the subsequent clause contains the explicit undertaking to indemnify. It is not limited in any way to seller's negligence, but expansively provides that plaintiff will be held harmless against losses "of *every* nature and description, out of or *in any manner* caused by the performance" (emphasis added) of the agreement by seller or its agents. There is no indication that the undertaking to indemnify does not extend to all possible contingencies, including occurrences caused in part by plaintiff's negligence. Concur—Rosenberger, J. P., Ross, Asch, Rubin and Tom, JJ.