**Kathleen GIBBS–ALFANO and Thomas Alfano, Plaintiffs,**

**The Ossining Boat & Canoe Club, Inc., Defendant–Appellee,**

**Raymond Perron, John J. D'Emidio, Peter Gendron, Elizabeth Feldman, Andrew Brown, Gary Schere and Michael Scarduzio, Defendants,**

v.

**William BURTON, Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter, Defendants–Appellants.**

**Docket No. 00–9553.**

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 2001.

Decided Jan. 31, 2002.

**14**

Milton Thurm, Thurm & Heller, LLP, New York, NY, (Angelo Rios, of counsel), for Defendants–Appellants.

Clifford L. Davis, White Plains, NY, for Defendant–Appellee.

Before: MINER, McLAUGHLIN, and STRAUB, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This case presents the thorny issue whether New York and federal law permit town council members to obtain indemnification under a license agreement. They allegedly failed to investigate charges of racial discrimination levied against the town's licensee, a private "boat and canoe" club. Both the council members and the club, separately and without admitting liability, settled the claims against them in the underlying civil rights action. Although we affirm the district court's interpretation of the license agreement, we rule that the district court erred in dismissing the council members' cross-claim for indemnification and in denying their motion for summary judgment.

## BACKGROUND

The history of this case is set forth in great detail by the district court in three opinions. *Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.*, 47 F.Supp.2d 506 (S.D.N.Y.1999) ("*Gibbs–Alfano I*"); *Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.*, 86 F.Supp.2d 382 (S.D.N.Y. 2000) ("*Gibbs–Alfano II*"); *Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.*, No. 98 CIV. 1069, 2000 WL 1677949 (S.D.N.Y. Nov. 3, 2000) ("*Gibbs–Alfano III*"). We assume familiarity with these opinions and restate here only the facts pertinent to this appeal.

## The License Agreement

The Ossining Boat & Canoe Club (the "Boat Club") is a private club that has operated since 1979 on property owned by the Town of Ossining, New York (the "Town"), pursuant to several license agreements granted by the Town. The license agreement in effect at the relevant time was granted in 1991 and was extended by resolution of the Ossining Town Council in 1995 for a five-year period covering January 1, 1996 to December 31, 2001 (the "License Agreement").

Under the License Agreement, the Boat Club must "accept a total membership as it is able to accommodate subject to the physical space limitations of its facilities." The Boat Club reserved the right to deny or terminate the membership of any individual who "is a danger to the health, safety, or welfare of the 'Club' or of any of its members." The License Agreement also states, however, that the Boat Club may not terminate any member based on considerations of "race, creed, color, national origin or sex" and prohibits the Boat Club from discriminating against any employee, applicant or member in any way.

For its part, the Town retains the right to terminate the License Agreement if the Boat Club fails to comply with any federal, state or local law affecting the License Agreement, or if, in its sole judgment, it finds the Boat Club is not operating in a "satisfactory manner."

## The Indemnification Clause

The License Agreement also contains a broad indemnification clause (the "Indemnification Clause"), which provides, in relevant part, that the Boat Club:

agrees to protect, defend, indemnify and hold the "TOWN" and its officers, employees and agents free and harmless from and against any and all losses, fees, or other expenses or liabilities of every kind and character arising out of or relating to any and all claims, liens, demands, obligations, actions, proceedings, or causes of action of every kind and character in connection with or arising directly or indirectly out of the performance of this Agreement by the "LICENSEE". Without limiting the generality of the foregoing, any and all such claims, etc., relating to … any … tangible or intangible personal or property right, or any actual or alleged violation of any applicable statute, ordinance, administrative order, rule or regulation, or decree of any court, shall be included in the indemnity hereunder. The "LICENSEE" further agrees to investigate, handle, respond to, provide defense for and defend any such claims, etc., at its sole expense and agrees to bear all other costs and expenses related thereto including attorney's fees, even if it (claims, etc.,) is groundless, false [or] fraudulent.

## The Lawsuit

In 1998, Kathleen Gibbs–Alfano, who is African–American, and her husband Thomas Alfano, who is Caucasian, brought an action in the United States District Court for the Southern District of New York (McMahon, J.), against the Boat Club and its Trustees (collectively, the "Boat Club Defendants"), and members of the Town Council–Town Supervisor William Burton, Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter (collectively, the "Town Defendants"). The Alfanos alleged that Mrs. Gibbs–Alfano was twice suspended and both she and her husband were "effectively" expelled from the Boat Club because of her "race and skin color" and their status as an interracial couple.

According to the plaintiffs, the Boat Club suspended Mrs. Gibbs–Alfano in 1994 on the pretext that she used foul language

at the Boat Club, when in truth she was suspended because of her race. They allege that the Boat Club tolerated its white members' habitual use of foul language and that the Boat Club took action only against her, despite her claim that the incident giving rise to her suspension was incited by "hostile and racially discriminatory conduct directed at [her]" by white Boat Club members.

A year later, Mrs. Gibbs–Alfano was again suspended from the Boat Club after yet another incident that allegedly was "incited by racially hostile conduct" directed at her by other white members of the Boat Club. According to the Alfanos, she was thereafter denied access to the Boat Club and, as such, was "in essence deemed expelled" by the Boat Club.

Two years later, Mr. Alfano was expelled from the Boat Club. The Alfanos allege that the Boat Club did not proffer written charges against Mr. Alfano, or give him advance notice of or an opportunity to defend against his expulsion.

On the basis of the foregoing, the Alfanos alleged claims against the Boat Club Defendants under: 42 U.S.C. § 1981, which prohibits race-based discrimination in the making and enforcing of contracts; 42 U.S.C. § 1983, which prohibits persons acting under color of state law from depriving individuals of rights, privileges and immunities secured by the United States Constitution and statutes; 42 U.S.C. § 1985, which prohibits persons from conspiring to deprive individuals of equal protection of the laws or of equal privileges and immunities under the laws; 42 U.S.C. § 2000a, which guarantees individuals full and equal enjoyment of places of public accommodation without race-based discrimination; and, finally, N.Y. Exec. Law § 296, New York State's analogue to § 2000a.[1]

After Mrs. Gibbs–Alfano was *de facto* expelled from the Boat Club (but before Mr. Alfano was expelled therefrom), she complained in writing to William Burton, the Town's Supervisor, about the "discriminatory and illegal behavior of the Boat Club." According to the Alfanos, the Town Council "intentionally chose not to investigate" her charges, despite Council Member O'Connor's oral representation to her that the Town's attorneys were "reviewing it." Piqued by this alleged nonfeasance, the Alfanos brought claims against the Town Defendants identical to the claims they brought against the Boat Club Defendants, asserting that: "By virtue of their knowing and willful disregard of the unlawful and discriminatory activities taking place on the Town property being used by the Boat Club, the Town Defendants in effect *ratified and adopted* as their own the actions of the Boat Club Defendants." (emphasis added).

### The Town Defendants' Cross–Claim

Soon after the Alfanos started the lawsuit, the Town demanded that the Boat Club Defendants "undertake to defend and indemnify the Town of Ossining and its officials" in connection with the lawsuit. However, the Boat Club declined to defend or indemnify the Town Defendants. The Town Defendants, under protest, retained their own counsel and assumed the cost of their defense. They later asserted a cross-claim for indemnification against the Boat Club in their answer to the complaint, seeking recovery of "any judgment that may be recovered by plaintiff against [the Town Defendants] ... together with

---

1. Although the Alfanos' complaint purports to state a claim under "Section 295 *et seq.* of the New York State Executive Law," it is clear from their allegations that they seek relief under Section 296.

the [Town Defendants'] expenses of investigation and attorneys' fees."

**Proceedings Before the District Court**

Before they filed their answers to the complaint, the Boat Club Defendants and Town Defendants each filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Gibbs–Alfano I*, 47 F.Supp.2d at 508. The district court denied these motions with respect to the Alfanos' §§ 1981, 1983 and 2000a claims and New York State Executive Law claim, but granted the motions with respect to the Alfanos's § 1985 claim. *Gibbs–Alfano I*, 47 F.Supp.2d at 510–14.

In ruling on the Town Defendants' motion to dismiss the Alfanos' § 1981 claim, the district court noted that "[a]s against the Town [D]efendants, the allegations in the complaint are less than detailed." *Id.* at 512. Nevertheless, the district court let the § 1981 claim stand, largely because the Town Defendants challenged only whether plaintiffs had a contract that was impaired, and "it has long been recognized that § 1981 forbids discrimination in club privileges and memberships." *Id.* (citing *Tillman v. Wheaton–Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973) and *Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir.1974)).

Regarding the Alfanos' claim that the defendants, acting under color of state law, deprived them of their federal rights in violation of § 1983, the district court noted that "[a] myriad of federal rights [were] implicated by defendants' alleged behavior, including plaintiffs' First Amendment association rights and their rights to substantive due process under the Fourteenth Amendment." *Id.* The district court sustained the Alfanos' claim against the Town Defendants on the ground that "[t]he Town Board could well have been under a duty to act" by virtue of its right to terminate the License Agreement, "and its inaction could have resulted in a deprivation of plaintiffs' constitutional rights." *Id.* at 513 (citing *Citizens Council on Human Relations v. Buffalo Yacht Club*, 438 F.Supp. 316, 323 (W.D.N.Y.1977)).

The district court sustained the Alfanos' § 2000a claim against the Town Defendants, finding that the Alfanos adequately pled a claim and noting that "the Town [D]efendants failed to brief the issue at all." *Id.* at 514. Finally, the district court decided to exercise supplemental jurisdiction over the Alfanos' state law claim, noting that the sole ground alleged by the defendants in favor of its dismissal was lack of jurisdiction if the federal claims failed. *Id.*

After discovery proceeded, the Town Defendants alone moved for summary judgment on the Gibbs–Alfanos' remaining claims against them, but the district court denied their motion. *Gibbs–Alfano II*, 86 F.Supp.2d at 384. With respect to the Alfanos' §§ 1981 and 2000a claims and their state law claim, the district court denied summary judgment on the grounds stated in *Gibbs–Alfano I*. *Gibbs–Alfano II*, 86 F.Supp.2d at 388–89.

In denying the Town Defendants' motion for summary judgment on the § 1983 claim, the district court built on the foundation laid in *Gibbs–Alfano I*, finding that the License Agreement "created an oversight function to be carried out by the Town" and that its terms "could be fairly seen to create a duty to enforce [its] provisions." *Id.* at 388. The Town Defendants' nonfeasance, according to the district court, "raise[d] a question of fact as to whether their inaction constituted race discrimination." *Id.*

The district court then set a date for a trial on the Alfanos' claims against the defendants. Before a jury was empaneled,

however, the Alfanos settled with the Boat Club Defendants and the Town Defendants, and the Alfanos dropped all their claims against the defendants. The settlement expressly provided that there was no acknowledgment of liability by any of the defendants.

Soon thereafter, the Town Defendants moved for summary judgment on their cross-claim for indemnification, seeking from the Boat Club an indemnity payment of $94,461.71–the amount they allege to have incurred by virtue of the settlement and in defense of the lawsuit, including attorneys' fees and other costs. In response, the Boat Club cross-moved for summary judgment dismissing the Town Defendants' cross-claim.

The district court analyzed the language of the License Agreement and found that the Indemnification Clause applies on its face to the costs incurred by the Town Defendants. *Gibbs–Alfano III*, 2000 WL 1677949, at *3. The district court noted, however, that "the New York Court of Appeals has held that a party who has settled a case, and thereafter seeks what it characterizes as indemnification, must show that it may not be held responsible in any degree for any injury suffered by the plaintiff." *Id.* (citing *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24–25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985)). The district court then explained that while the Town Defendants' nonfeasance "can be said to have arisen out of the [Boat Club's] malfeasance, it is not vicarious liability, but a separate and independent wrong for which plaintiff[s] sought redress." *Id.* Thus, the district court held that "the indemnification provision will not be enforced, despite the terms of the License Agreement." *Id.* Accordingly, it denied the Town Defendants' motion for summary judgment on their cross-claim,

and dismissed the cross-claim as a matter of law. *Id.* at *4.

The Town Defendants now appeal from the district court's denial of their motion for summary judgment on their cross-claim and its judgment dismissing their cross-claim.

## DISCUSSION

### Standard of Review and Choice of Law

"We review the grant or denial of summary judgment *de novo*." *Republic Nat'l Bank of New York v. Delta Air Lines*, 263 F.3d 42, 46 (2d Cir.2001). A court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The parties' briefs assume that New York law controls the interpretation of the License Agreement, and such implied consent is sufficient to establish choice of law. *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000). In interpreting state law, we "look to the state's decisional law, as well as to its constitution and statutes." *Id.* Where New York law is unsettled, this Court is

obligated to predict carefully how the state's highest court would resolve the uncertainty or ambiguity. *Id.* In making this prediction, we give the "fullest weight" to pronouncements of the state's highest court, while giving "proper regard" to relevant rulings of the state's lower courts. *Id.* "We may also consider decisions in other jurisdictions on the same or analogous issues." *Id.*

## Interpretation of the Indemnification Clause

The Town Defendants do not quarrel with the district court's interpretation of the Indemnification Clause. Indeed, the district court found that the Indemnification Clause applies on its face to the costs the Town Defendants incurred in defending and settling the lawsuit. We find no error in the district court's analysis in this regard.

 It is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract. *Weissman v. Sinorm Deli, Inc.,* 88 N.Y.2d 437, 446, 646 N.Y.S.2d 308, 669 N.E.2d 242 (1996). Thus, "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). Nevertheless, "[a] contract of indemnity need not explicitly state an intent that the undertaking extend to the indemnitee's own negligent acts." *New York Tel. Co. v. Gulf Oil Corp.,* 203 A.D.2d 26, 609 N.Y.S.2d 244, 246 (1st Dep't 1994). Instead, where there is all-encompassing language in an indemnification agreement, the New York Court of Appeals has divined the "unmistakable intent of the parties" to indemnify against the indemnitee's negligent acts. *Levine v. Shell Oil Co.,* 28 N.Y.2d 205, 212, 321 N.Y.S.2d 81, 269 N.E.2d 799 (1971); *see also, e.g., Margolin v. New York Life Ins. Co.,* 32 N.Y.2d 149, 153, 344 N.Y.S.2d 336, 297 N.E.2d 80 (1973).

 As the district court observed, the Indemnification Clause at issue is extremely broad. Among other things, it requires the Boat Club to indemnify the Town Defendants "against any and all losses, fees, or other expenses or liabilities of every kind arising out of or relating to any and all claims ... in connection with or arising directly or indirectly out of the performance of [the License] Agreement by the [Boat Club]." Although the Alfanos' claims against the Town Defendants were based on the Town Defendants' nonfeasance-i.e., their failure to investigate the Boat Club's discriminatory expulsion of the Alfanos— the Town Defendants' duty to investigate would never have been invoked but for the Boat Club's malfeasance. We find that the broad, all-encompassing language of the Indemnification Clause clearly evinces the Boat Club's intent to indemnify the Town Defendants for the Town's own nonfeasance. Thus, we rule that the district court did not err in determining that the Indemnification Clause, on its face, applies to the Alfanos' claims against the Town Defendants.

But the district court's decision did not end there.

### *Rosado v. Proctor & Schwartz, Inc.*

 As explained earlier, the district court, relying on *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985), held that, despite the parties' intention, the Indemnification Clause was unenforceable as a matter of law. Analysis of *Rosado,* however, persuades us that the district court overstated the breadth of that New York Court of Appeals decision.

Admittedly, *Rosado* does state that "[a] party who has settled and seeks what it characterizes as indemnification ... must show that it may not be held responsible in any degree." *Id.* at 25, 494 N.Y.S.2d 851, 484 N.E.2d 1354. But *Rosado* was a case where there was no express indemnification agreement and one party sought to imply one. Indeed, the party seeking indemnification in *Rosado* "accept[ed] that no basis for contractual indemnity existed] since [the other party] did not explicitly agree to indemnify or hold it harmless from [plaintiff's] claims." *Id.; cf. Monaghan v. SZS 33 Assocs.,* 73 F.3d 1276, 1284–85 (2d Cir.1996) (citing *Rosado* for the proposition "that *common-law indemnity* is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff") (emphasis added). Moreover, the court in *Rosado* found that the claim for "implied indemnification" was a masked attempt to avoid the contribution bar erected by N.Y. Gen. Oblig. Law § 15–108(c).[2] 66 N.Y.2d at 25, 494 N.Y.S.2d 851, 484 N.E.2d 1354 ("The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification.").

Thus, *Rosado* did not alter two well-established New York rules: (1) parties may obtain contractual indemnity from liability-even where such liability is incurred in whole or in part through their own fault-through express, "unequivocal" agreements to that effect,[3] *e.g., Margolin,* 32 N.Y.2d at 153, 344 N.Y.S.2d 336, 297 N.E.2d 80; *Levine,* 28 N.Y.2d at 210–12, 321 N.Y.S.2d 81, 269 N.E.2d 799; and (2) Section 15–108(c)'s contribution bar does not apply to a settling defendant's claim for indemnity (as distinct from contribution) under an express contractual provision that shifts liability in its entirety to another party, *Weinstock v. Jenkin Contracting Co.,* 134 A.D.2d 254, 520 N.Y.S.2d 589, 590–91 (2d Dep't 1987), *appeal denied,* 70 N.Y.2d 616, 526 N.Y.S.2d 437, 521 N.E.2d 444 (1988). In light of our holding, *ante,* that the language of the Indemnification Clause evinces the Boat Club Defendants' unmistakable intent to indemnify the Town Defendants for the conduct at issue, we find *Rosado* inapposite.[4]

Our inquiry, however, does not end here. We now consider whether allowing the Town Defendants to seek indemnification for costs in defending and settling the lawsuit against them would offend public policy.

**Public Policy**

The Boat Club argues that enforcement of the Indemnification Clause in this case

---

**2.** N.Y. Gen. Oblig. Law § 15–108(c) states:

> (c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.
> (McKinney 2001)

**3.** That the Court of Appeals' decision did not alter the law regarding express contractual indemnity is made perfectly clear by the Appellate Division's earlier holding in *Rosado* that: "No reason exists why ... the manufacturer ... should be permitted to shift liability to ... the purchaser, where the agreement between them imposed no duty of indemnifi-

cation.... *Had the parties intended indemnification, their contract could have clearly so provided."* *Rosado v. Proctor & Schwartz, Inc.,* 106 A.D.2d 27, 483 N.Y.S.2d 271, 274 (1st Dep't 1984) (emphasis added), *aff'd,* 66 N.Y.2d 21, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985).

**4.** For substantially the same reasons, we find *Aetna Life & Casualty Co. v. Blue Bird Co.,* 140 A.D.2d 476, 528 N.Y.S.2d 588 (2d Dep't 1988)—another case involving a claim for implied indemnification and relied on by the district court in *Gibbs–Alfano III*—inapposite to the issues presented in this appeal.

would violate New York State and federal public policy. At the outset, it is questionable whether a New York State Court, applying New York substantive law, would analyze the Indemnification Clause herein under both New York and federal public policy. *Cf. Donaldson Lufkin & Jenrette Sec. Corp. v. Star Techs., Inc.*, 148 Misc.2d 880, 561 N.Y.S.2d 371, 372 (Sup.Ct.1990) ("Although the Agreement ... states that it is to be governed and construed in accordance with [New York State law], federal law governs the right to indemnity thereunder as the claim arose out of a case brought on asserted violations of federal securities laws."), *aff'd on reh'g*, 150 Misc.2d 126, 567 N.Y.S.2d 1002 (Sup.Ct. 1991), *aff'd mem.*, 180 A.D.2d 495, 580 N.Y.S.2d 657 (1st Dep't 1992). Nevertheless, we find in the upshot that enforcement of the Indemnification Clause does not offend *either* New York State or federal public policy.

**1. New York Public Policy**

■ The New York Court of Appeals has stated that "[i]ndemnification agreements are unenforceable as violative of public policy only to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury." *Austro v. Niagara Mohawk Power Corp.*, 66 N.Y.2d 674, 676, 496 N.Y.S.2d 410, 487 N.E.2d 267 (1985). Had the Alfanos gone to trial and succeeded on their § 1981 claim against the Town Defendants, they necessarily would have proven that the Town Defendants intentionally discriminated against them. *See, e.g., Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Yet, the Boat Club Defendants have not cited any case, and we found none, where a New York court declined to enforce an otherwise valid indemnification agreement between parties where the party seeking indemnification

settled, without admitting liability, claims against it alleging intentional wrongdoing. Thus, in the absence of a judgment of intentional conduct on the part of the Town Defendants, we do not find any reason under New York public policy to hold the Indemnification Clause unenforceable.

**2. Federal Public Policy**

■ This Court has once before decided whether federal public policy bars a settling defendant charged with intentional discrimination from seeking contractual indemnity from another. In *Stamford Board of Education v. Stamford Education Ass'n*, female teachers sued the Stamford Board of Education, their teachers' union and the union's successor for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act, 29 U.S.C. §§ 206(d)(1)-(2). 697 F.2d 70, 71 (2d Cir.1982). The teachers alleged that the Collective Bargaining Agreement ("CBA") between the Board and the unions contained a pay schedule that discriminated against female teachers in favor of male teachers. In turn, the Board cross-claimed against both unions seeking indemnity pursuant to a "hold harmless" clause in the CBA. Soon thereafter, the district court granted the unions' motions for summary judgment dismissing the Board's cross-claims. Over a year later, the district court approved a settlement between the Board and the teachers and entered a consent judgment. The Board then appealed to this Court from the district court's grant of summary judgment in favor of the unions on the Board's cross-claims.

Noting the strong federal policy against sex discrimination, as evidenced by the Fourteenth Amendment to the United States Constitution, Title VII and the Equal Pay Act, and our stated policy "that

a party may not indemnify himself against his own willful, reckless or criminal 'misconduct," *id.* at 74 (citing *Globus v. Law Research Serv., Inc.*, 418 F.2d 1276, 1288 (2d Cir.1969)), we affirmed the district court's decision to dismiss the Board's cross-claim. Our decision was informed, however, by a record that strongly suggested intentional · sex discrimination by the Board. Specifically, we noted that:

> While there was no finding below as to the relative intent of the parties to the contract, the logical reason why the contract contained a "hold harmless" clause was because at least one of the parties (probably, the Board) thought that there was a good chance that the pay schedule in the [CBA] would be held discriminatory.

*Id.* Noting further that the "hold harmless" clause appeared in the very same article of the contract that incorporated the discriminatory pay schedule, we held the clause unenforceable as applied, because to do otherwise "would be to fully indemnify the Board for what is partly its own willful misconduct." *Id.*

■ Our opinion in *Stamford Board of Education* suggests that federal public policy bars claims for contractual indemnity by a settling defendant where there exists either: (1) a factual finding of discriminatory conduct by the indemnitee; or, at least, (2) a set of circumstances that strongly suggests discriminatory conduct by the indemnitee. *Id.* at 74.[5]

Applying the standard set forth in *Stamford Board of Education* to the facts before us, we conclude that federal policy does not bar enforcement of the Indemnification Clause. Once again, we emphasize that there was no finding below of intentional wrongdoing by the Town Defendants. And in startling contrast to the CBA at issue in *Stamford Board of Education*, which, on its very face mandated a discriminatory pay schedule, the License Agreement here expressly forbids the Boat Club from discriminating against members of the Boat Club or those who apply for membership therein.

Finally, we find persuasive the Seventh Circuit's decision in *Chicago Housing Authority v. Federal Security, Inc.*, 161 F.3d 485 (7th Cir.1998)-a case which involved facts strikingly similar to the case at bar. In *Chicago Housing Authority*, the plaintiff alleged that security guards employed by Federal Security, Inc. ("FSI"), while working under a contract for the Chicago Housing Authority (the "CHA"), shot and killed plaintiff's son. *Id.* at 486. She sued the security guards, FSI and the CHA, alleging that the CHA had negligently hired, trained and retained FSI as a private security contractor and had acted with deliberate indifference to the safety of her son, in violation of 42 U.S.C. § 1983. In turn, the CHA lodged a cross-claim against FSI for indemnification pursuant to an express indemnification clause in their service contract.

---

**5.** Two years after our decision in *Stamford Board of Education*, we held that a union found liable for discriminating against its members in violation of Title VII and § 1981 could not seek implied indemnity against the members' employer. *Anderson v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 751 F.2d 546, 550 (2d Cir.1984). In affirming the district court's grant of summary judgment dismissing the indemnity claim, we found "lit-

tle reason to depart from general principles of common law in order to recognize a right of . . . indemnification in favor of the intentional tortfeasor." *Id.* Unlike *Anderson*, in the case before us there was no finding below that the Town Defendants intentionally discriminated against the Alfanos. Moreover, involving as it did a claim for implied, as opposed to contractual, indemnity, *Anderson* is inapposite to the issues presented in this appeal.

After the plaintiff settled her claims against the guards, FSI and the CHA, FSI moved for summary judgment on the CHA's cross-claim for indemnification. The district court granted FSI's motion.

On appeal, the Seventh Circuit restated the Illinois Supreme Court's holding "that 'an agreement to indemnify against wilful misconduct would, as a general rule, be contrary to public policy and unenforceable.'" *Id.* at 488 (quoting *Davis v. Commonwealth Edison Co.*, 61 Ill.2d 494, 336 N.E.2d 881, 885 (1975)). Nevertheless, the Seventh Circuit reversed the district court's grant of summary judgment, stating:

> [T]o the extent [plaintiff's] original complaint included charges against the CHA at all, its allegations related to CHA's dealings with FSI. Thus, ... it claimed that the CHA was deliberately indifferent to ongoing illegal activity by the FSI guards, and that the CHA was negligent in choosing FSI as the security provider. We see nothing in the general Illinois rule against contracts to indemnify someone for the consequences of its intentional or negligent acts that would preclude enforcement of a contract requiring the primary wrongdoer to bear the financial burden of its actions.

*Id.* at 489; *cf. Vargas v. Hudson County Bd. of Elections*, 949 F.2d 665, 671, 673–74 (3d Cir.1991) (holding that New Jersey public policy did not preclude defendants who settled claims against them under 42 U.S.C. §§ 1971, 1973, 1981, 1983, 1985 and 1986 from seeking indemnity under insurance contract in the absence of factual findings that their conduct was criminal).

We see no meaningful distinction between the facts of *Chicago Housing Authority* and those at issue herein. In both cases, the settling party seeking indemnification was essentially charged with nonfeasance arising from a more culpable party's malfeasance. Like our sister Circuit, we see nothing in the general rule against contracts to indemnify a party for the consequence of its intentional conduct that would preclude enforcement of the Indemnification Clause under the circumstances presented to us.

### CONCLUSION

In sum, while we AFFIRM the district court's interpretation of the Indemnification Clause, we REVERSE the district court's dismissal of the Town Defendants' cross-claim and its denial of the Town Defendants' motion for summary judgment on that claim. This case is hereby REMANDED to the district court for a determination of the appropriate indemnity payment owed to the Town Defendants and for entry of judgment in their favor.