**Kathleen GIBBS–ALFANO and Thomas Alfano, Plaintiffs,**

**v.**

**The OSSINING BOAT & CANOE CLUB, INC., Raymond Perron, John J. D'Emidio, Peter Gendron, Elizabeth Feldman, Andrew Brown, Gary Scherer, Michael Scarduzio, William Burton, Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter, Defendants.**

**No. 98 Civ. 1069(CM).**

United States District Court, S.D. New York.

May 3, 1999.

Michael O'Neill, New York City, for plaintiffs.

Clifford L. Davis, White Plains, NY, for defendants.

MEMORANDUM DECISION DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' CLAIMS UNDER 42 U.S.C. §§ 1981, 1983, 2000(a) AND THE NEW YORK HUMAN RIGHTS LAW, AND GRANTING THE MOTIONS TO DISMISS PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1985

McMAHON, District Judge.

The plaintiffs are an interracial couple who claim to have been expelled from membership in the Ossining Boat & Canoe Club, Mrs. Gibbs–Alfano in 1995 and her husband Thomas Alfano in 1997. They claim that racial animus towards Mrs. Gibbs–Alfano, who is African American, was the motivating factor behind their expulsion. Plaintiffs brought this action against the Boat Club and seven of its trustees (collectively, the "Boat Club defendants"), and the Ossining Town Supervisor and four members of the Ossining Town Board (collectively, the "Town defendants"). They assert claims under 42 U.S.C. §§ 1981, 1983, 1985 and 2000(a), and a pendent state law claim under the New York Human Rights Law.

Both groups of defendants have moved to dismiss the plaintiffs' claims in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions are denied. Drawing all reasonable inferences from the allegations in the complaint, as I must on a motion to dismiss, it does not appear beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.

*Background*

The Ossining Boat & Canoe Club is a non-profit corporation located on Westerly Road in the Town of Ossining, in an area commonly referred to as Louis Engel Waterfront Park. The Boat Club is operated on property licensed from the Town of Ossining pursuant to a License Agreement dated January 1, 1991 (the "License" or "Agreement"). The License for use of the property, originally for a five year term, was renewed in September 1995 for an additional five years, to end December 31, 2001.

The License Agreement expressly provides that the Boat Club is granted a license, not a lease, to the Town property upon which it operates, and that the Club may continue in possession of the licensed property "only so long as each and every provision and condition" in the License Agreement is complied with. (License Agreement ¶ 3.) The Agreement further states that the Town of Ossining may ter-

minate the Boat Club's License for failure "to comply with any of the provisions of th[e] Agreement, any Federal, State or Local Law affecting th[e] License," or if, in its sole judgement, the Town decides that the Boat Club is not operating the License in a satisfactory manner. (License Agreement ¶ 14.) The Town reserves to itself the right to review and approve plans for construction or renovation on the licensed property, and to approve the dues charged by the Boat Club to members. The Boat Club agrees to provide liability and property damage insurance and to defend and indemnify the Town for any and all claims against it relating to use of the licensed property. (License Agreement ¶¶ 25, 28, 29.) The Club pays a nominal annual fee to the Town for the License. (License Agreement ¶ 9.) The License Agreement expressly states that the Boat Club agrees to operate the License "for the accommodation of the public . . . ," and that the Club "shall be used exclusively for the stowage and storage or equipment and for the promotion of water and boating safety. . . ." (License Agreement ¶ 5.)

The membership of the Boat Club consists of the duly elected members of the Board of Trustees and as many other members as the Club is able to accommodate subject to the physical space limitations of the Club's facilities. (License Agreement ¶¶ 6, 7.) Vacancies in membership are filled from a waiting list, in strict order by date of application. Under the terms and conditions of the License, the Boat Club is specifically granted "the right to reject any applicant or to terminate the membership of any individual if such individual is a danger to the health, safety, or welfare of the [Club] or any of its members," provided such termination is not based upon consideration of "[r]ace, creed, color, national origin or sex." (License Agreement ¶¶ 7, 21.) The License states that the Club "shall at all times be represented by its duly elected Board of Trustees." (License Agreement ¶ 6)

Plaintiffs Thomas Alfano and Kathleen Gibbs–Alfano became members of the Ossining Boat & Canoe Club in 1988. In October 1994, Mrs. Gibbs–Alfano was "suspended" from the Club for using foul language during an incident that took place at the Club. (Cplt. ¶¶ 28, 30.) Although the complaint does not say so, the suspension must have been lifted, because one year later, in October 1995, Mrs. Gibbs–Alfano was suspended again, following another incident between her and other members of the club. (Cplt. ¶ 31.) The Boat Club apparently did not proffer a specific reason for the second action against the plaintiff. Plaintiffs' contention is that both suspensions were motivated by racial bias against Mrs. Gibbs–Alfano and disapproval of the interracial marriage of the plaintiffs. (Cplt. ¶ 27.) Plaintiffs allege that the Boat Club trustees tolerated the use of foul language by other members of the Club, who are white, yet they suspended Mrs. Gibbs–Alfano for using foul language. (Cplt. 30.) Plaintiffs also allege that the trustees knew of and condoned hostile racially discriminatory conduct directed at Mrs. Gibbs–Alfano, including the conduct that precipitated the incidents leading to her two suspensions. (Cplt. 30, 31.) The Boat Club has not lifted the second suspension of plaintiff Gibbs–Alfano, and thus plaintiff has effectively been expelled from membership.

In May 1996, Mrs. Gibbs–Alfano wrote to the Town of Ossining Board to lodge a complaint about the allegedly discriminatory and illegal actions taken by the Boat Club when it suspended her and failed to revoke that suspension. Plaintiff directed her complaint to defendant William Burton, the Ossining Town Supervisor. Plaintiff received no formal response from Mr. Burton or from any other representative of the Town; however, she claims she was informed by defendant Michael O'Connor—then a Town Councilman—that the Town's attorneys were "reviewing [the complaint]." (Cplt. ¶ 43.)

In September 1997, Mr. Alfano met with his own difficulties at the Boat Club when "the Boat Club Defendants purported to expel Thomas Alfano from the [ ] Club." (Cplt.¶ 47.) The Boat Club failed to provide a reason for Mr. Alfano's suspension and has not lifted the suspension. Plaintiffs assert that Mr. Alfano's *de facto* expulsion from the Club is a result of the same racial bias against his wife and disapproval of their marriage that led to Mrs. Gibbs–Alfano's expulsion two years earlier.

Additionally, the complaint states that, in contravention of the Club's By–Laws, neither plaintiff was given written charges, notice of the charges, or an opportunity to defend against the charges against them before being suspended from the Boat Club. (Cplt.¶¶ 29, 31, 47.)

### Standard of Review

The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read the complaint generously, drawing all reasonable inferences from the complaint's allegations. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Thus, I proceed to examine the complaint to determine whether the plaintiffs have alleged facts which could entitle them to relief upon each claim asserted, bearing in mind that the court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Ry-der Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)). See also *Strougo v.. Padegs,* 27 F.Supp.2d 442, 449 (S.D.N.Y.1998) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the claims.")

### The Section 1981 Claims

The plaintiffs' first claim is that they were denied rights conferred by the Civil Rights Act of 1866, 42 U.S.C. § 1981, because race was a motivating factor behind the expulsion of each from the Boat Club. Section 1981 provides:

> "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

42 U.S.C. § 1981.

Section 1981 bars certain racially motivated, intentionally discriminatory acts, *see General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), including racial discrimination in the making and enforcement of private contracts. See *Johnson v. Railway Express Agency,* 421 U.S. 454, 459–460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Tillman v. Wheaton–Haven Recreation Assn.,* 410 U.S. 431, 439–440, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973). The statute's prohibitions apply to private as well as state actors. See *Yusuf v. Vassar College,* 35 F.3d 709, 714 (2d Cir.1994) (citing *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 609, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). Defendant Ossining Boat Club, although a private club, is therefore subject to this statutory command just as is the Town. There is no

disagreement among the parties on these propositions. Rather, the issue is whether the plaintiffs have alleged racial discrimination with sufficient particularity under § 1981.

■ To state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts). It is well settled in this Circuit that "[i]n order to survive a motion to dismiss, the plaintiff must specifically allege the *events* claimed to constitute intentional discrimination as well as *circumstances giving rise to a plausible inference of racially discriminatory intent.*" *Yusuf v. Vassar College*, 35 F.3d at 713 (emphasis added).

■ Plaintiff Gibbs–Alfano is an African American and has therefore alleged that she is a member of a racial minority. She has also alleged that both groups of defendants intended to discriminate against her on the basis of her race, and that the discrimination interfered with her contractual rights as a member of the Boat Club. The complaint states that the Boat Club Trustees suspended Gibbs–Alfano from the Club for using foul language, but that "foul language among Whites is universally tolerated in the Boat Club." (Cplt.30.) Gibbs–Alfano also alleges in the complaint that "Defendants ... tolerated the open use of racial epithets directed at plaintiff Kathleen Gibbs–Alfano...." (Cplt.34.), and that the incidents giving rise to both the 1994 and 1995 suspensions of the plaintiff were "incited by hostile and racially discriminatory conduct directed at plaintiff" which the Boat Club defendants were aware of and failed to take any action against, in spite of the fact that the actions of Boat Club members violated the Clubs By–Laws and rules of conduct. Finally, plaintiff Gibbs–Alfano alleges in the complaint that her suspensions and *de facto*

expulsion from the Club were acts taken by the Boat Club Trustees without drawing up written charges, giving notice of the charges, or allowing plaintiff to defend against such charges—all of which are required by the By–Laws of the Club before a suspension can take place. All of these facts support an inference of racially discriminatory intent by the Boat Club defendants with respect to the suspension of plaintiff Gibbs–Alfano from the Boat Club.

■ While plaintiff Thomas Alfano's allegations are somewhat less particularized, he too has alleged circumstances giving rise to an inference of discriminatory intent on the part of the Boat Club defendants with respect to his suspension. The complaint states that plaintiff Alfano was suspended from the Club and that, upon his suspension, "no written charges were proffered against [him], and he was not provided with either notice of the charges or given an opportunity to defend against the same." (Cplt.47.) Because the Boat Club has not asserted a valid reason for the suspension, and plaintiff alleges that the true reason was hostility toward plaintiff's wife and the plaintiffs' interracial marriage, I find sufficient allegations of fact to support an inference of racially discriminatory intent underlying Thomas Alfano's suspension from the Club. Finally, plaintiff Thomas Alfano, while white, has standing to sue under § 1981. *See Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (holding that a white person who has been punished for trying to vindicate the rights of a non-white minority has standing under § 1981.); *see also DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir.1975). Alfano alleges that after his wife's *de facto* expulsion from the Boat Club, he "continued to oppose the illegal and discriminatory conduct of the Boat Club Defendants, including their continued refusal to permit plaintiff Kathleen Gibbs–Alfano to be present on the premises of the Boat Club." This is sufficient to give him standing under *Sullivan*.

■ As against the Town defendants, the allegations in the complaint are less than detailed. However, plaintiffs allege that each Town Board member and the Town Supervisor had "actual knowledge of the unlawful and discriminatory acts of the Boat Club defendants on Town property, [and] intentionally chose not to investigate or take any other action with respect thereto." (Cplt.44.) Any questions with respect to plaintiffs' allegations against the Town defendants—specifically, whether plaintiffs allege liability against the Town only for its failure to act upon plaintiff Gibbs–Alfano's complaint (thus limiting the claim against these defendants to one by Gibbs–Alfano and not her husband)—are likely to disappear after discovery and upon examination of a full record. Furthermore, in their motion to dismiss the § 1981 claim, the Town defendants have challenged only that plaintiffs had a contract that was impaired. However, it has long been recognized that § 1981 forbids discrimination in club privileges and memberships. *Tillman v. Wheaton–Haven Recreation Assn., Inc.,* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973); *Olzman v. Lake Hills Swim Club, Inc.,* 495 F.2d 1333 (2d Cir.1974). Therefore, I deny the motion to dismiss the § 1981 claims against the Town defendants.

*The Section 1983 Claims*

In order to state a claim under 42 U.S.C. § 1983, plaintiffs must allege that a right found in the Constitution or other federal law was violated and that the person who violated that right was acting under color of state law. *See Bernheim v. Litt,* 79 F.3d 318, 321–22 (2d Cir.1996) (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). A myriad of federal rights are implicated by defendants' alleged behavior, including plaintiffs' First Amendment association rights and their rights to substantive due process under the Fourteenth Amendment. The issue to be determined on this motion to dismiss is whether the facts alleged indicate that the Boat Club acted "under color of state law."

■ Plaintiffs argue that the termination of plaintiffs' memberships in the Boat Club by the Boat Club defendants constituted state action because the Boat Club and the Town are involved in a symbiotic relationship through the License Agreement and because the Boat Club performed a public function. "[W]hether particular discriminatory conduct is private or amounts to state action can only be ascertained by sifting facts and weighing circumstances." *Citizens Council on Human Relations v. Buffalo Yacht Club,* 438 F.Supp. 316, 323 (W.D.N.Y.1977) (citing *Burton v. Wilmington Parking Authority,* 365 U.S. at 722, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961)). The court in *Buffalo Yacht Club* denied a motion to dismiss § 1983 claims against both a private yacht club and the City of Buffalo for the denial by the club of membership to plaintiffs on the basis of their sex. In that case, the defendant Yacht Club was situated on land owned by the City of Buffalo and leased to the Yacht Club. The court found that there was a mutually beneficial relationship between the City and the Club (i.e., substantial benefits flowed in both directions because the Club leased prime lakefront property for a pittance and Buffalo benefitted by the development and care of public park land, insurance protection purchased by the Club, promises of indemnification relating to the leasehold, and increased taxes, sewer and water revenues), that the Club performed a public function because it was required by its lease to give public access to City-owned park land surrounding the Club, and that the City had been apprised of the Yacht Club's discriminatory practices. The court therefore found the necessary state action to support a § 1983 claim against the Yacht Club, and found that the City would also be liable for the Yacht Club's discriminatory actions if the City was under a duty to act but failed to act with respect to those actions.

■ The facts in this case mirror those in *Buffalo Yacht Club*, and the factors considered by that court when assessing whether the private club acted "under color of state law" are all present in this case. There is a mutually beneficial relationship between the Ossining Boat Club and the Town of Ossining (the Boat Club benefits from use of the Town's land for a nominal annual fee; the License provides significant benefits to the Town because all improvements to the property are paid for by the Boat Club and become the property of the Town immediately upon construction, and the boat Club provides insurance coverage to the Town and defense and indemnification against all claims relating to use of the licensed property); the Boat Club performs a public function because the License expressly states that the Club agrees to operate the License for the accommodation of the public and to promote water and boating safety ... during the term of the License;[1] and finally, the Town was apprised, through the written complaint made by Gibbs–Alfano in May 1996, that the Boat Club was allegedly engaging in discriminatory conduct. The cumulative impact of these factors is sufficient to find that there was "state action" for purposes of § 1983, and therefore I deny the motion to dismiss that claim against the Boat Club.

■ Respecting the Town defendants, the failure of a municipality and its public officials to act constitutes state action when the municipality is under a duty to act and the inaction results in the deprivation of constitutional rights. *Buffalo Yacht Club*, 438 F.Supp. at 323 (citing *Jennings v. Patterson*, 488 F.2d 436, 441 (5th Cir.1974)). It cannot be said at the present time that the inaction of the Town Board and Town Supervisor does not constitute state action. The License Agreement provides that termination by the Boat Club of a membership "may not be based upon any considerations of [r]ace, creed, color, national origin or sex." (License Agreement 7.) The License Agreement further states that "[The Boat Club will not discriminate against any employee, applicant or member because of race, creed, color, national origin or sex.]" The Town had the power to terminate the License for failure to comply with any provision of the License or with any Federal, State or Local Law. (License Agreement 14.) The Town Board could well have been under a duty to act and its inaction could have resulted in a deprivation of plaintiffs' constitutional rights. *Buffalo Yacht Club*, 438 F.Supp. at 323.

Plaintiffs' failure to state whether the Town defendants are sued in their official or individual capacities is not fatal to their claim; discovery will elucidate whether the inaction of the Town Supervisor or Town Board with respect to plaintiffs' suspensions or expulsions from the Boat Club was due to misconduct of individual Town defendants or ratification of the acts of the Boat Blub defendants by the Board in its official capacity, or some combination of the two. The motion to dismiss the claim against the Town defendants is denied.

*The Section 1985 Claims*

■ The Second Circuit has set forth the elements to be pleaded in a § 1985(3) claim as follows: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). "To plead conspiracy, a complaint must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions

1. Moreover, the preamble to the License states that "WHEREAS", the "TOWN" desires to provide certain services and facilities for the accommodation of the public, and "LICENSEE" desires to construct, improve, operate and maintain said facilities....

directed toward an unconstitutional end." *Julian v. New York City Transit Authority,* 857 F.Supp. 242, 252 (E.D.N.Y.1994), *aff'd* 52 F.3d 312 (2d Cir.1995). Plaintiffs acknowledge that they have not made any allegations of specific conspiratorial conduct in the complaint. Therefore, their § 1985 claim must fail.

*The Section 2000a and State Human Rights Law Claims*

■ Plaintiffs have adequately pled a claim under 42 U.S.C. § 2000a. Section 2000a provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin." The complaint alleges not only that the plaintiffs were suspended and ultimately expelled from the Boat Club on the basis of racially discriminatory acts by the defendants (Cplt.¶¶ 27, 28, 30–32, 46–47), but that plaintiff Gibbs–Alfano was "at various times [ ] barred ... from the Boat Club premises...." (Cplt.¶ 33.) Simply stated, plaintiffs have sufficiently alleged a denial of access to the Boat Club and an inference of discriminatory treatment. The Boat Club defendants' assertions to the contrary are unpersuasive, and the Town defendants failed to brief the issue at all. The motion to dismiss the claim under § 2000a is therefore denied.

I will allow the plaintiffs' State Human Rights Law claim to stand while discovery moves forward. The sole basis asserted by the defendants to dismiss the State Law claim is the lack of jurisdiction if the Federal claims fail. However, since plaintiffs have adequately alleged Federal claims, pendent jurisdiction over the related State Law claims is proper pursuant to 28 U.S.C. § 1367.

This constitutes the decision and order of the Court. The parties are directed to comply with the Civil Case Management Order issued on January 29, 1999. Please note that, pursuant to this Court's Standing Order, all discovery disputes are to be brought to the assigned Magistrate Judge.