**Kathleen GIBBS–ALFANO and Thomas Alfano, Plaintiffs,**

v.

**THE OSSINING BOAT & CANOE CLUB, INC., Raymond Perron, John J. D'Emidio, Peter Gendron, Elizabeth Feldman, Andrew Brown, Gary Scherer, Michael Scardusio, William Burton, Edward Wheeler, Sue Poverman, Michael Burton, Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter, Defendants.**

No. 98 Civ. 1069 (CM).

United States District Court, S.D. New York.

March 10, 2000.

Michael G. O'Neill, New York City, for Plaintiffs.

Clifford Davis, White Plains, NY, for Boat Club Defendants.

Ann Marie Vroman, Thurm & Heller, LLP, New York City, for Town Defendants.

## MEMORANDUM ORDER DENYING TOWN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART BOAT CLUB DEFENDANTS' MOTION IN LIMINE

McMAHON, District Judge.

Plaintiffs, Kathleen Gibbs–Alfano and her husband, Thomas Alfano, are an interracial couple who claim to have been expelled improperly from membership in the Ossining Boat & Canoe Club (the "Boat Club") in violation of their civil rights and rights to public accommodation under 42 U.S.C. §§ 1981, 1983, 1985, 2000a. They have also joined a state claim under the New York Human Rights Law. They bring claims against the Boat Club; seven of the Boat Club's trustees; and the Ossining Town Supervisor, William Burton, and four of the Ossining Town Council members, Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter (collectively, the "Town Defendants"). On May 3, 1999, this Court denied Defendants' motions to dismiss the Section 1981, 1983 and 2000a claims, and dismissed the 1985 claim. *See Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.*, 47 F.Supp.2d 506 (S.D.N.Y.1999).

The Town Defendants have moved for summary judgment on three grounds: (1) that Plaintiffs have failed to establish state action by the Town Defendants under Section 1983; (2) that Plaintiffs have failed to state a claim under Section 1981 and Section 2000a.; and (3) that having failed to state any federal claim, Plaintiffs' pendent state claims against the Town Defendants should be dismissed.

The Boat Club Defendants have moved in limine to exclude certain evidence from trial.

For the reasons stated below, summary judgment is denied. Boat Club Defendants' motion in limine is denied in part and granted in part.

*Standard*

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## I. *Factual Background*

This case is before the Court on a motion for summary judgment brought by the Town Defendants. In an opinion dated May 3, 1999, the Court denied a motion to dismiss brought by these same Defendants. *Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.*, 47 F.Supp.2d 506 (S.D.N.Y.1999). Familiarity with that opinion is presumed.

The following are the facts present in the record before this Court, viewed in a light most favorable to the Plaintiffs:

The Town of Ossining, New York, is perhaps best known as home to Sing Sing, the maximum security state penitentiary, which, no doubt, conjures images of murderers, thugs and mobsters behind a great walled fortress. Less known to those who do not have the good fortune to reside in the majestic Hudson Valley is that Ossining, situated as it is on the east bank of the Hudson at a point were the river is over a mile wide, is also a place of great natural beauty and an ideal spot for water sports and other riverside recreational activities. The Ossining Boat and Canoe Club was established to offer a place for local residents to take advantage of these recreational opportunities offered by the Hudson River. (Vrooman Aff. at Exh. B, pp. 19–27; Exh C, pp. 24–26.)

The Boat Club is located on Westerly Road in the Town of Ossining, in an area commonly referred to as Louis Engel Waterfront Park. The Boat Club consists of a clubhouse, a boat ramp and mooring slips, and operates on property that was originally licensed from the Town of Ossining in 1979. The license agreement has been renewed at five- and ten-year intervals since 1979. The current License Agreement was most recently renewed in September 1995, and expires on December 31, 2001.

The License Agreement provides that the Boat Club is granted a license—not a lease—to the town property upon which it operates. Pursuant to the License Agreement, the Boat Club agrees to operate "for the accommodation of the public ....," and "shall be used exclusively for the stowage and storage of equipment and for the promotion of water and boating safety...." (Vrooman Aff. at Exh. A.) It further provides that the Boat Club may continue in possession of the licensed property "only so long as each and every provision and condition" in the License Agreement is complied with. (*Id.*) The Town of Ossining may terminate the license "for failure to comply with any of the provisions of th[e] Agreement, or any Federal, state or Local Law affecting th[e] License," or if, "in its sole judgment, the Town determines that the [Boat Club] is not operating the License in a satisfactory manner." (*Id.*)

Pursuant to the License Agreement, the Boat Club is specifically granted "the right to reject any application or to terminate the membership of any individual if such individual is a danger to the health, safety or welfare of the Boat Club or any of its members," provided such termination is not based upon "[r]ace, creed, color, national origin or sex." (*Id.*) The Boat Club provides Ossining residents with low-cost access to boating recreation on the river. Club members pay dues and maintain the facilities, without cost to the Town of Ossining.

The Town Council of the Town of Ossining is a five-member citizen board, whose members are part-time employees of the town. The Council exercises oversight of all the Town's departments. Members of the Town Council do not possess individual authority; each Council member's authority derives from his or her ability to act collectively with other members of the Council. The Town Supervisor serves as the fifth member of the board.

In 1996, Defendant William Burton was the Town Supervisor for the Town of Ossining. As Town Supervisor he was the Chief Executive Officer of the town. He also voted at meetings of the Town Council. Defendants Edward Wheeler, Sue Poverman, Michael O'Connor and Geoffrey Harter were the other four members of the Town Council in 1996.

The Gibbs–Alfanos became members of the Boat Club in 1988. Ms. Gibbs–Alfano had her Club privileges suspended in October 1994 and again in October 1995. Mr. Alfano was expelled from the Club in September, 1997. Prior to his expulsion, Mr. Alfano had served as the Club's Commodore.

On May 29, 1996, Plaintiffs together wrote a letter "to whom it may concern" stating that they wished "to lodge a formal complaint of Discrimination and Harassment against the Ossining Boat & Canoe Club and it's [sic] Board." (Vrooman Aff. at Exh. D.) Although not addressed to him, this letter was forwarded by a Town staff member to Defendant William Burton. According to his testimony, Defendant Michael O'Connor also received a copy of the letter. The letter stated:

We have been members since 1988 and have seen (and at time even been the recipients of) discrimination and harassment in all forms instigated by the above mentioned [trustees and members of the Boat Club] and other members of this institution.

In the past three years we have become the main focus of their blatant behavior; myself being subjected to libelous statements and discrimination, my husband to verbal abuse and threats.

The gravamen of her complaint to the Council, although not made entirely clear in the letter, was that she had been discriminated against as evidenced by her disparate treatment by the Club trustees. When she was involved in violations of club rules, disciplinary sanctions—including suspension of her Club privileges—were taken against her by the boat Club trustees, while during the same period, other members who engaged in egregious examples of illegal conduct on the Club's premises received no reprimand or sanction.

In the letter, Mrs. Gibbs–Alfano recounted general examples of misbehavior by other members of the club: a Club member grabbing her breast; a bachelor party on the beach attended by some of the Boat Club trustees where women were paid to perform sexual acts in the Club bathrooms; operation of a beer vending machine on Club premises from which minors were allowed to retrieve beer; and members smoking marijuana on the premises. Her letter went on the state:

Because of all the alcohol consumption on the premises things sometimes get out of hand. Twice I have been involved in confrontations with members because of this. The Board has chosen to "single" me out as a person who disrupts the "quality of life" and has suspended me. The first time I conceded to their kanga-

roo form of justice because I did lose my temper when other members chose to involve themselves in a situation they knew nothing about. However, on the other hand no one else involved in the situation was reprimanded, and I was not allowed to state my case fairly.

She continued:

[A]lthough I have not set one foot on the premises under 'their' terms, they continue their harassment, except now my husband is the focus...

I make my complaint to you because the building is leased and therefore I believe falls under a government municipality. I believe by overlooking the behaviors of this organization you are condoning the activities which are questionable, and if practiced anywhere else would be subjected to criminal and/or civil law. I also feel these decisions to find me guilty by their standards are now and in the past have been subtle forms of racism and sexism.

On July 11, 1996, Mrs. Gibbs–Alfano sent a letter to Mr. Burton, specifically requesting a follow-up to her May 29 complaint letter.

Defendant O'Connor ran into the Gibbs–Alfanos at the Ossining village fair, who asked him whether any action was going to be taken on the letter. He responded at the time that he did not think the Town board was doing anything about the letter. A week or so after that conversation, O'Connor testified that he raised the letter at a weekly Council work session. (O'Connor Dep. at 13–14.) Mr. Burton testified somewhat differently, although his recollection of the meeting was rather vague. (Burton Dep. at 7.)

In any event, the letter was shared with the other members of the town Council at one of their weekly work sessions. Work sessions are different from the bi-monthly public business sessions. No votes are taken at work sessions, nor is a record of minutes kept. If a matter raised at a work session is deemed important enough, they are forwarded to the business section for action. Matters considered important "are either dropped or postponed or dealt with in some other way." (*Id.* at 8). Work session are by law open to the public, but historically have not been attended by members of the public.

At the work session, a discussion was held regarding whether there was any purpose to the Council taking action, or whether the matter was an internal dispute within the Boat Club. The members present (there is nothing in the Record to indicate who those member were), including the Town Attorney, did not indicate in any way that they intended to follow up on the matter. Mr. Burton testified that those present quickly concluded that the matter was not something the Town Council should be involved in, and that there was no need for further discussion or action.

Neither Mr. Burton nor any other members of the Council took action on behalf of the town to investigate the matter raised in Mrs. Alfano's letter. After the meeting, Mr. Burton threw away the letter. (Burton Dep. at 54.) He did not communicate with Mrs. Alfano in any way about her complaint, or about the fact that the Council was not taking action to follow up on her complaint. He did not respond to the follow-up letter sent by Mrs. Alfano on July 11.

Mr. O'Connor ran into the Alfanos near the Boat Club at some point after the Council meeting. When they inquired about Mrs. Gibbs–Alfano's complaint, Mr. O'Connor told them that the Council was not taking any action at that time. (O'Connor Dep. at 26–27.) Mr. O'Connor testified that he also might have told them that the town attorneys were looking into the matter, even though he had no knowledge as to whether they were looking into it or not. (*Id.*)

Mr. O'Connor also discussed the Alfano's complaint in general terms with at least three members of the Boat Club board. He reached his own conclusion,

based on those conversations, that the problems Mrs. Gibbs–Alfano was experiencing were not racial discrimination, but had stemmed from Mr. Alfano being ousted from the position of Club Commodore.

Plaintiffs filed this suit on April 23, 1998.

## II. *Discussion*

### A. *Section 1983 Claim: State Action by the Town Defendants*

The gravamen of Mrs. Gibbs–Alfano's claims against the Town Defendants is that by failing to take action in response to her letter of complaint, the Town Defendants deprived her of a constitutional right under color of state law in violation of Section 1983. The Town Defendants argue in response that there is no evidence of state action, and therefore the claim must be dismissed. The argument is largely a matter of law, and I reject it just as I rejected the same argument when it was proffered by the Town Defendants in their motion to dismiss.

The applicable law and legal standards were addressed in detail in the Court's opinion denying the motion to dismiss. *See Gibbs–Alfano,* 47 F.Supp.2d at 514. When I wrote that opinion, I expressed the view that "discovery will elucidate whether the inaction of the Town Supervisor or Town Board with respect to plaintiffs' suspensions or expulsions from the Boat Club was due to misconduct of individual Town defendants or ratification of the acts of the Boat Club defendants by the Board in its official capacity, or some combination of the two." *Id.* at 513.

The (scant) Record before me consists entirely of the License Agreement, the two complaint letters sent by the Gibbs–Alfanos, and depositions of Mr. Burton and Mr. O'Connor. The Record indicates that Plaintiffs are not claiming that members of the Town Council were actively involved in the suspensions and expulsions, but rather that the Council's refusal to take action amounted to ratification of the Club's actions. The Record also contains some is-

sues of material fact as to whether Council Member Michael O'Connor discussed Plaintiff's complaints with members of the Club and Club trustees. Whether those discussions took place before of after this lawsuit was filed, is in dispute. (O'Connor Dep. 11–13.) This evidence may support a claim of further involvement by a member of the Town Council in the Club's business and decision-making or it may not. That, of course, is a question of fact to be determined by a jury.

The Town Defendants argue that the Plaintiffs' Section 1983 claim that their inaction ratified the conduct of the Club should be dismissed because the Town Council was under no duty to act. They argue that no duty exists because (1) Plaintiffs have failed to establish a sufficient nexus between the Town of Ossining and the Boat Club, or between the Town and the Boat Club to constitute "state action" on the part of the Town Defendants; and (2) their failure to respond to the May letter does not constitute "state action" because the alleged discriminatory acts took place before the letter was received.

In order to make out a claim under 42 U.S.C. § 1983, plaintiffs must show that a constitutional or other federal right was violated and that the person who violated it acted under color of state law. *See Bernheim v. Litt,* 79 F.3d 318, 321–22 (2d Cir.1996). Thus, as I explained in detail in my earlier opinion, in order to make out a Section 1983 claim against the Boat Club or members of the Boat Club board, Plaintiffs must show that the Boat Club's actions were those of a state actor. Despite Plaintiff's briefing this issue, The Boat Club Defendants have not moved for summary judgment, and the issue of their liability is not before me.

Action or failure to act by a member of a municipal board in his official capacity is, of course, state action. *Buffalo Yacht Club,* 438 F.Supp. at 323. Defendant is correct that municipal officers are

absolutely immune from liability under Section 1983 where the acts of conduct complained of arose out of the performance of legislative acts. *See Goldberg v. Town of Rocky Hill,* 973 F.2d 70 (2d Cir. 1992). The claim here, however, does not arise from the Town Defendant's performance of their legislative duties. Her argument arises out of the Council's duty of oversight over the Boat Club, a duty which she contends arises out of the License Agreement. This duty is administrative or executive in nature, and does not touch on the Council's legislative function.

■ In arguing that the Boat Club was not a state actor within the meaning of Section 1983, Defendants restate the argument they made in their motion to dismiss. And because that argument is based on questions of law arising out of the License Agreement, I deny it here on the same grounds I denied it on the 12(b)(6) motion. *See Gibbs–Alfano* 47 F.Supp.2d at 513.

I find that the terms of the License Agreement created an oversight function to be carried out by the Town. The License Agreement conferred authority on the Town to terminate the license for failure to comply with any of the Agreement's provisions—including the nondiscrimination provisions—and any federal, state or local law affecting the License. The License also gave the Town discretion to revoke the license "in its sole judgment" if the Club was not operating in a "satisfactory manner." This authority, in turn, could be fairly seen to create a duty to enforce the License provisions. By bringing to the Council's attention the alleged violations of the Club License Agreement, and violations of law carried out by members of the Club and its leadership, Ms. Gibbs–Alfano was appealing to the Council for it to enforce the Agreement. That they failed to take any action raises a question of fact as to whether their inaction constituted race discrimination.

I note that the depositions of Burton and O'Connor lend more support to Plaintiffs' claims. Indeed, both O'Connor and Burton testified that where a town resident made allegations of serious violations of the license agreement, such violations ought to be investigated. (Burton Dep. at 39–41; O'Connor Dep. at 32–38). In addition, O'Connor's testimony that the Town reaped financial benefits from a low-cost Boat Club that was financed through its own membership, rather than from town tax revenues, only bolstered the Plaintiffs' claim of the strong nexus between the Club and the Town. (O'Connor Dep. at 20.)

Defendants' argument that the alleged racial discrimination took place before they received notice does nothing to absolve them of a duty to act. And their argument that Ms. Gibbs–Alfano's letter failed to state that she was black, or that she and her husband were an interracial couple is absurd. The mere allegation of discrimination, in violation of the License Agreement, was enough to trigger the Council's duty. In any event, it is clear from O'Connor's testimony that he knew the Gibbs–Alfanos; at least one of the Council Members present at the Working Meeting knew that she was African–American and that her husband was white.

### B. *Section 1981 and Section 2000a Claims*

Plaintiffs' claims against the Town Defendants under Sections 1981 and 2000a are essentially the same as their claim under Section 1983: That the Town Defendants were on notice that Plaintiffs' rights under Sections 1981 and 2000a were being violated by the Boat Club defendants; that the Town Defendants were under a duty to act, failed to act, and their failure to act was a proximate cause of the deprivations of their rights under the laws in question.

In their motion for summary judgment on these two claims, Defendants merely repeat the arguments made on their 12(b)(6) motion. I ruled there, and reiterate that ruling, that Plaintiffs; have alleged events sufficient to give rise to an inference of intentional discrimination, as

required when making out a Section 1981 claim. *See Gibbs–Alfano* 47 F.Supp.2d at 511 (citing *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994)). Because Town Defendants have raised no issue of material fact, and they have acknowledged that Plaintiffs have otherwise sufficiently pleaded a Section 1981 claim, summary judgment is denied.

I also deny the motion for summary judgment on the Section 2000a claim. Defendant raises no evidentiary issues on this claim, and, as it is grounded in the same facts as the Section 1983 claim, I see no reason to dismiss it.

Because I have denied Defendant's motion for summary judgment on the federal claims, the Court retains jurisdiction over Plaintiffs' pendent state claims.

### C. *Remaining Motions in Limine*

The Boat Club Defendants have moved under Fed. R. Evidence 403 to exclude from evidence: (1) certain statements attributed to Donald Zerilla, a former officer and trustee of the Boat Club who is now deceased; and (2) evidence of the Boat Club's sale of beer.

 The statements Defendants wish to exclude are tape-recordings made on or about August 15, 1997, about conversations that Mr. Alfano had with Mr. Zerilla. In addition to constituting double hearsay, the tapes contain no useful or relevant information and can only serve to confuse the jury. They are therefore excluded.

The evidence of beer sales on the premises is highly probative of two facts: (1) whether the Boat Club trustees had notice of other violations of the terms of the License Agreement; and (2) whether the Boat Club trustees took any action to enforce the License Agreement. Because this bears directly on the Plaintiffs claim of selective enforcement of the Club rules, I hold that it is admissible.

Jury selection is set for May 8, 2000.

This constitutes the decision and order of this Court.